## Selig *v.* Philadelphia, Appellant.

*Municipalities—City of Philadelphia—Powers—Taxation—Assessment of property.*

The Act of March 14, 1865, P. L. 320, and its supplements, withdrawing from the councils of the city of Philadelphia supervisory power over the assessment of real estate and conferring power upon the court of common pleas of the county of Philadelphia, to appoint a board of revision of taxes, establishes a complete system for assessing taxable property and the councils of Philadelphia are without power to appropriate moneys for the purpose of a duplicate assessment, which, when made, would have neither validity or utility.

Argued, Feb. 28, 1911. Appeal, No. 346, Jan. T., 1911, by defendants, from decree of C. P. No. 2, Phila. Co., No. 1,646, in equity, granting injunction in suit of Emil Selig *v.* City of Philadelphia, John E. Reyburn, Mayor of the City of Philadelphia, John M. Walton, Comptroller

of the City of Philadelphia, Murrell Dobbins, Treasurer
of the City and County of Philadelphia, A. M. DePrefon-
taine, Henry R. Shoch, Edward W. Patton, Peter E.
Costello, John H. Baizley, Thomas Wagner, Jr., a joint
special committee of select and common councils, and
Manufacturers' Appraisal Company. Before FELL, C. J.,
POTTER, ELKIN, and STEWART, JJ. Affirmed.

Bill in equity to have set aside an ordinance of the city
councils of Philadelphia, approved August 5, 1910, and
a certain contract dated August 10, 1910, entered into in
pursuance thereof, and to enjoin any payments under this
contract.

The facts appear in the following opinions of the lower
court by SULZBERGER, P. J., and WILTBANK, J.

SULZBERGER, P. J.: ·
This is a motion for preliminary injunction on a bill by
citizens, residents and taxpayers, to prevent the payment
of moneys of the city of Philadelphia, alleged to be due
by said city to a corporation of another state doing busi-
ness within this commonwealth, under a contract entered
into between the city and it on August 12, 1910. Under
the terms of that contract it was provided that the cor-
poration in question should make a report to a committee
of councils of Philadelphia of an appraisal, showing, in its
judgment, the present value in money of the lands and
buildings comprised in wards fifth, sixth, seventh, eighth,
ninth, tenth and twenty-second in the city of Philadelphia,
in consideration for which services the city agreed to pay
for said report and appraisal the sum of $1.70 for each
appraisal of land valued and reported, and, in addition,
the sum of $1.70 for each building valued and reported,
the payments to be made in installments as follows:
$15,000 on the last day of August, 1910; $10,000 on the
last days of September, October and November, 1910,
and the balance on the completion of the valuation and
delivery of the report, which must be on or before Decem-

ber 15, 1910; it being understood that the total payments under the contract should not exceed $85,000.

The plaintiffs contend that the contract is void, and that no payment can be made thereunder, because:

1. It was awarded without competition.

2. The price is exorbitant.

3. The Somers system, under which the work is to be done, is composed of two elements, personal judgment and well-known arithmetical rules, and that arithmetical rules, being the property of all persons, have no pecuniary value.

4. The report of the contracting company would be valueless, because, when put in the possession of councils, the latter have no authority over the subject.

5. The ordinance authorizing the contract and the contract itself are void, because—

(a) The ordinance is in violation of the Act of assembly of May 23, 1874, sec. 3, P. L. 230.

(b) Because the contract is in violation of the Act of assembly of May 23, 1874, sec. 6, P. L. 230.

(c) Because the passage of the ordinance and the making of the contract are not within the power of the city, and the payment of money thereunder would be an appropriation of money for a corporation in violation of art. IX, sec. 7, of the constitution.

Some testimony was offered on both sides. We are clear, however, that its consideration is of no substantial importance.

In our view, the question is one of law purely, involving the consideration of the power of the city of Philadelphia to use the money of the city for the purpose contemplated. Under the constitution and laws of Pennsylvania, all the sovereignty inherent in a state, and not ceded to the United States of America, belongs to the commonwealth and to the commonwealth alone. Within its domain there are no co-ordinate sovereignties. There are agencies called counties, cities, towns, etc., upon whom the power to exercise certain portions of the state sovereignty, within

certain limits and for certain specified purposes, may from time to time be conferred by the state. Cities upon which such powers are conferred are commonly said to have city charters. These charters, however, are merely revocable at the will of the legislature by laws properly enacted. From the historical fact that in England there were charters of a higher grade for certain cities, no consequences can be drawn for our commonwealth. Doubtless it was felt, when sovereignty was divided between the United States and our commonwealth, that a further subdivision within the commonwealth would imperil its position, if any question should ever arise between its sovereignty and that of the nation. At all events, the one and indivisible nature of our state sovereignty has been consistently and jealously guarded.

By the constitution of 1874, art. III, sec. 7, it is expressly provided that the general assembly should not pass any local or special law incorporating cities, towns or villages, or changing their charters, the manifest object being to prevent the conferring upon one locality of powers of a higher grade than could safely be conferred on all.

Taxation is one of the highest functions of sovereignty. Its effect is to take for the use of the State a portion of the private property of a citizen, upon his implied consent to such taking, which implied consent may not, in law or in fact, be denied. In order that such taxation shall be fair and equal, the state has established a uniform system, providing for assessors of counties, whose duty it is to take an account of real and personal property belonging to each of the taxable inhabitants within their jurisdiction. And these assessors must swear that they will justly and honestly to the best of their judgment, assess and value every separate lot, piece or tract of land, with the improvements thereon, and all personal property made taxable by the laws of this commonwealth at the rate or price which they, after due examination and consideration, believe the same would sell for, if sold singly and separately and at a bona fide sale, after full public notice, and that

they will perform their duties with honesty and fidelity, according to the laws of this commonwealth, without fear, favor or affection, hatred, malice or ill-will. This oath is under the Act of July 27, 1842, sec. 9, P. L. 441, and by sec. 10 of the same act a board of revision is provided, whose duties, under sec. 13, are defined to be to examine and inquire whether the returns of the assessors have been made in conformity with the laws of this commonwealth, and whether all property to be valued for taxation for state and county purposes has been valued at a sum or price not less than the same would bring, after full public notice, at a public sale, supposing each separate lot or piece or tract of land, with the improvements, or the personal property of each individual, company or corporation only were to be sold. They are, moreover, to consider the written communications of any taxable inhabitant of the county relative to any property which such taxable inhabitant shall believe to have been reduced too low or raised too high, and raise or reduce the same so as to revise and equalize the assessment.

This system, general through the state, was altered by the consolidation Act of February 2, 1854, P. L. 21, for the city of Philadelphia, and the councils of that city were made the supervisory power, but after the lapse of a decade, to wit, on March 14, 1865, this special privilege to the city was withdrawn and power was conferred upon the court of common pleas of the county of Philadelphia to appoint a board of revision of taxes, and this act, with the supplements thereto, has had the effect of bringing the system within the city into its former harmony with the system prevailing in the state generally. It has been used without question for forty-five years, and by common consent has been accepted as a substitute for the legislation on that subject, contained in the consolidation act of 1854, for the obvious reason that where the simultaneous administration of an earlier system and a later system is practically impossible, the act establishing the later system, by necessary implication, repeals the former act.

We have, therefore, a complete system established by the commonwealth itself for assessing taxable property. By the concession of the commonwealth, the taxes on one great class of property taxable by the State are yielded to the city, to wit, the taxes on real estate. By no stretch of imagination can it be conceived that the city has any power over the assessors or the board of revision on questions affecting the assessment of subjects of taxation in which the state alone is concerned to the exclusion of the city. If, therefore, the city claims any power in the premises, it must be only a partial power. Its utmost contention cannot go beyond a claim that it may interfere with the assessment of real estate, but not with the assessment of personal estate. Any power claimed by a municipal corporation to supervise, in part or in whole, a department created by the commonwealth must be based upon an express grant, or upon necessary implication from such a grant.

The able presentation of this case by the learned counsel for the various defendants has not indicated to us any such grant of power. The full and satisfactory discussion of the various questions involved has, however, made plain that the making of this contract was based on a supposed power of the city to expend municipal taxes for the establishment of a complicated and extensive censorship of a state department, whose rulings are subject to appeal, not to the municipal councils, but to the courts of the commonwealth. No reason has been shown why this power, if it exists, in the councils of the city of Philadelphia does not inhere likewise in all the municipal corporations within the commonwealth, nor has it been made clear that this censorship is or ought to be limited to but one department or bureau of the state government.

To follow the claim to its logical conclusion would be to place at the mercy of a temporary majority in councils enormous sums of money for the mere purposes of complaint and criticism, to duplicate existing state agencies responsible to proper tribunals, by phantom municipal

agencies, totally irresponsible and totally powerless. This is not an orderly, legal or constitutional mode of correcting public abuses.

By the third section of the Act of May 15, 1841, P. L. 393, any assessor or assistant assessor who shall knowingly or intentionally omit, neglect or refuse to assess and return any property, person or thing made taxable by law, or shall knowingly and intentionally assess, rate or value the same at more or less than he shall know and believe the just cash value or rate thereof, or neglect or refuse to assess any tax required by law, shall be guilty of misdemeanor in office, and on conviction thereof be subject to imprisonment for not less than three nor more than twelve months, and fined in a sum not less than $100 nor more than $200.

Moreover, from the decision of such an assessor there is an appeal to the board of revision, and from the decision of the board of revision an appeal to the court of common pleas. These are orderly and legal modes of carrying on public business, and involve no capricious outlay of vast sums of public money for mere purposes of inquiry.

The most that can be said for the defendants' position is that they desire to show that, in some way not known to the assessors, a more equal and just system of fixing valuations can be devised than is at present in use. With the merits or demerits of the particular system in question we have no concern. It seems to be conceded by all that, whatever system is adopted, its basis must be the fair prices obtained by actual sales in each vicinity. The most that can be contended is that it is theoretically possible from such actual sales to derive a stable law which shall ascertain the general judgment of buyers as to values in a particular vicinity. In view of the great differences between the intellects of men, and having regard to the complexity of modern urban life and the vicissitudes in national financial conditions and prosperity, the establishment of such a fixed rule cannot be said to be easy of attainment. Assuming, however, that the difficulty has

been perfectly solved, and that it shows that the law now regulating the judgment of assessors is inadequate and should be replaced by an improved standard, the proper forum to address is the legislature of the commonwealth. One who, by his industry, his talent and a happy combination of circumstances, has succeeded in solving the problem may, if he chooses, preserve it as a trade secret with which he is unwilling to part, save for an adequate consideration. We are bound to assume that the legislature, representing the people of this commonwealth, will be alert to amend laws that need improvement, and also to give just compensation to anyone who renders service to the commonwealth.

From all this, however, it is impossible to gather, or by any process of reasoning to infer, a power in the councils of Philadelphia to appropriate large masses of the funds collected by taxation for the mere purpose of a duplicate assessment, which, when made, will have neither validity nor utility. It has no validity, because the assessment as made by the constituted authorities stands. It has no utility, because the assessment does not of itself disclose the method employed in the making of it with such precision and certainty that the legislature could incorporate it into an act of assembly instructing the assessors how they are to proceed.

There is no provision in the constitution or in the statutes which expressly confers such vague powers upon the city of Philadelphia, nor is there anything in them from which the grant of such powers could be necessarily or even remotely implied. We entertain grave doubts whether the legislature itself could constitutionally duplicate an official bureau whose province it is to act, by an unofficial bureau without any governmental function whatever.

Be that as it may, we are clearly of opinion that the councils of the city of Philadelphia had no power to direct the payment asked to be restrained.

Let a preliminary injunction issue to John M. Walton,

Esq., comptroller of the city of Philadelphia, and Murrell Dobbins, Esq., treasurer of the city and county of Philadelphia, restraining them from paying to the said The Manufacturers' Appraisal Company any sum or sums of money under the authority of the ordinance of councils exhibited to us as exhibit "B," attached to and a part of the bill of complaint. Security to be entered in $5,000.

WILTBANK, J.:

This is a motion for a special injunction to restrain certain officers of the city and county of Philadelphia from paying to the Manufacturers' Appraisal Company any sum or sums of money under and in pursuance of an intended authority or direction in a certain ordinance of councils, and to enjoin the defendants from performing any act or acts preliminary to the making of such payments.

Some preliminary suggestions occur to us as worthy of mention here, although they do not state or affect what we conceive to be the point open for our order.

The litigation has been inaugurated by taxpayers of the city in consequence of its employment of a corporation to make appraisals of real estate in houses and lands situate in certain wards, and of the appropriation by councils of a sum of $85,000 to be expended in part or in whole in compensation for the services and outlay of the company engaged.

It has been shown to us by competent and extended proof that the object of the employment was and is to secure a scientific ascertainment of values by the use of a method brought to our notice as the Somers system. This system has been discussed at large. A respectable company, one of the defendants, avails itself of it, and for the purposes of this inquiry it may be regarded as embodying a defensible method, worthy of intelligent and earnest study.

With respect to it, however, certain inquiries are pertinent. What is the authority and what the sanction of this appraisement? Does it bind persons or bodies, civic

or politic? Is it a method of lawful municipal action? And, were we to assume it to result in an ascertainment of values, would it be open to just criticism on the part of the taxpayer that the proper tests had not been applied, and that, in its most important particular, the test adopted had been an avowed departure from the rule of market value? This rule prevails here at common law and by statute (Act of July 27, 1842, P. L. 441), and is inflexible.

We find no answer to these inquiries which accredits the system and discloses features superior to those of the procedure of the state officers now and for many years engaged upon the same work.

A standard of market value is always available, and it should not be superseded by an artificial scheme, the peculiar merits of which, if any, are not published, and which, therefore, its advocates may well claim we are not in position either to approve or condemn.

The present, however, is not a question of the merit of the Somers system, or of the sanction or authority of the investigation and report in which some of the defendants are engaged; but it is a question solely of the authority of the city to pay moneys provided for as incident to the contract with the Manufacturers' Appraisal Company. Whether the order for this appraisement is within the law or not I conceive we have not the jurisdiction to determine, because its promulgation by the city, according to the papers in evidence, rests in the legislative discretion of councils, if they have the authority to act, and this discretion we may not review.

It is not disputed that the councils have authority to make proper investigation in matters of civic government, in the interest of the municipality and for the benefit and welfare of the citizens at large. We cannot be asked to interfere with the exercise of a function both lawful and beneficial: Stegmaier v. Goeringer, 218 Pa. 499; Com. v. Pittsburg, 183 Pa. 202. Here, however, an exhaustive investigation with relation to taxation has been provided and prescribed by the legislature, and has proceeded,

according to one statutory method or another, from the beginning of the history of the municipality to this day. The officers to whom it is, and has been, committed are experts chosen under legislative sanction, and they are the fountain of information open to councils, and of them no complaint is made by the defendant. Indeed, there has been at bar a special and official disclaimer of any imputation upon the skill, the industry, or the integrity of the assessors in charge of the work. The legislative instrumentality may not be overridden by the agency created by the city authorities, and the work of that agency must therefore of necessity be legally ineffective. No new assessment is within the power of the municipal legislative body as a consequence of the judgment of the Manufacturers' Appraisal Company. The best that could be obtained from an admirable return of skilled workmen would be a statistical report not conclusive even of the mathematical values of a comparatively small number of districts of the city out of the many comprising the whole.

It has been conceded in the able argument offered in behalf of the officers of the city that there is no express legislative authority in the councils of the city to appropriate moneys in this behalf, and that if the present appropriation is lawful it is in virtue of an implication of authority. It is contended that it is thus lawful. We have considered the arguments and proofs submitted on this point. We fail to find warrant for the affirmative contention.

In Com. v. Pittsburg, 183 Pa. 202, it was held that the city might appropriate money to a committee of private citizens which had been created by the chamber of commerce, a corporation therein existing, and later approved and accredited by the city councils, to defray the expenses of surveys for a ship canal, and to secure information from experts touching the practicability of such canal and the probability of its commercial advantage. It was held that the appropriation was valid as within the power

of the councils. The argument on the part of the contestants was that this action was within the inhibition of sec. 7, art. IX. of the constitution, which forbids a municipality "to appropriate money or loan its credit to any corporation, association, institution or individual." The Supreme Court did not sustain the appeal. The judgment there proceeded, according to our understanding, upon the doctrine frequently announced, and herein expressed, that in matters of civic government councils may legislate in the interest of the municipality for the benefit and welfare of the citizens at large where they do not interfere or impinge upon the sphere and authority of agencies already created for the attainment of the same object or violate the conditions of their charter. That case differs from this in that there had been created no power to act upon the important subject committed to a body described upon the record as "The Provisional Committee of the Lake Erie and Ohio River Ship Canal." In the case at bar we have already shown that the state has provided a public department for the appraisal of real estate.

In Lesley v. Kite, 192 Pa. 268, the councils of Philadelphia gave subcontractors a remedy that was analogous to an attachment of certain funds due by the city to the principal contractor, although the legislature had provided no such remedy. The ordinance was held invalid, as an attempt to provide an action inconsistent with, and not authorized by, the existing legislative system. The Supreme Court said: "Councils are powerless to provide any remedy to be used as a substitute for attachment or any other remedy which the legislature has heretofore withheld on grounds of public policy or otherwise." In Bechtel v. Fry, 217 Pa. 591, it was adjudged that the county commissioners had no authority to pay special counsel in a criminal prosecution in which the county was interested, for the reason that the legislature had committed to a special officer the duty of prosecuting offenders against the peace and dignity of the state and of bringing them to judgment.

In Grannis v. Commissioners, 81 Minn. 55 (83 N. W. Repr. 495), individuals had been employed to make search for land which the constituted authorities had failed to list for taxation, and were to receive a compensation contingent on the amount discovered and reported. It was held: "The Legislature has provided officers whose duty it is to levy all taxes, officers to cause all property to be properly assessed and placed upon the tax rolls, and officers for the collection of such taxes. . . . It is true that a county is interested and concerned in the matter of the collection of taxes. Its revenues are derived chiefly therefrom, and it is important to it, and to the State as well, that all property properly taxable pay its just share and proportion of the public burdens. But the county is not charged with the duty of seeing to it that all such property is assessed and placed upon the tax rolls. Other officers acting independent of the county are charged with the performance of such duties and they are alone responsible therefor. The matter of unearthing and discovering property which has escaped taxation is not only not necessary to the exercise of the corporate powers of a county, but is beyond its express or its implied authority."

In Stevens v. Henry County, 218 Ill. 468 (75 N. E. Repr. 1024), the court enjoined payment upon a contract for the employment of a tax expert, which employment was independent of the legislative system then in force. "The statute having designated the proper officers to discharge this duty and having charged them therewith, and provided for the compensation they shall receive, we do not think the county, in the absence of any specific grant, had power to enter into the contract"—under review.

The limitations upon the power of a municipality to legislate the appropriation of funds out of the course of the usual and ordinary administration of the affairs common to the life of such a body, have been ascertained in many of the states of the union, and laid down with precision upon final judgments of the courts of last resort. These decisions have been in accord with the views we

herein express. We may cite Minot v. West Roxbury, 112 Mass. 1; Coolidge v. Brookline, 114 Mass. 592; Mead v. Acton, 139 Mass. 341 (1 N. E. Repr. 413); Henderson v. Covington, 77 Ky. 312; Frankfort v. Winterport, 54 Me. 250; Westbrook v. Deering, 63 Me. 231. These cases have been relied on as bearing mainly upon the question of the power of a municipality to expend money in an appeal to a state legislature for the grant of additional and special municipal authority, but the discussion therein of the issues severally involved is sufficiently wide and authoritative to afford light and assistance in the treatment of the question at large. The plaintiffs have shown an equity to relief under the first clause of the third prayer of the bill.

#### DECREE

This cause came on to be heard at this term and was argued by counsel, and upon consideration thereof it was ordered, adjudged and decreed as follows:

Let a preliminary injunction issue to John M. Walton, Esquire, comptroller of the city of Philadelphia, and Murrell Dobbins, treasurer of the city and county of Philadelphia, restraining them from paying to the said Manufacturers' Appraisal Company, any sum or sums of money, upon the authority of the ordinance of councils, exhibited to us as exhibit "B," attached to and made a part of the bill of complaint. Security to be entered in $5,000.

*Error assigned* was the decree of the court.

*John C. Bell,* with him *Paxson Deeter,* for Manufacturers' Appraisal Company, *Francis Shunk Brown,* for councils' committee, and *James Alcorn,* city solicitor, and *Ernest Lowengrund,* for appellants.—Councils have the power to investigate the valuation and assessment of real estate within the city, and they have the power to make an appropriation for the purpose of securing expert services in such an investigation: Philadelphia v. Flanigen, 47

Pa. 21; Eckstein's Petition, Yard's App., 148 Pa. 509; Com. v. Pittsburg, 183 Pa. 202; State v. M., K. & T. Ry. Co., 164 Mo. 208 (64 S. W. Repr. 187).

*Horace Stern* and *Hampton L. Carson*, with them *Morris Wolf*, for appellee.—No power, express or implied, is given by the legislature to councils of the city of Philadelphia, concerning the making of assessments of real estate or to make contracts or pay money for said assessments, nor to contract for an investigation in regard thereto: Lesley v. Kite, 192 Pa. 268; Whelen's App., 108 Pa. 162; Bloomsburg Land Imp. Co. v. Bloomsburg Boro., 215 Pa. 452; Pittsburg's Petition, 138 Pa. 401; Stevens v. Henry County, 218 Ill. 468 (75 N. E. Repr. 1024).

PER CURIAM, July 6, 1911:

The decree appealed from is affirmed for the reasons stated in the opinion of the learned judges of the common pleas.