Clark *v.* Meade, Appellant.

Argued November 20, 1951. Before DREW, C. J., STERN, STEARNE, LADNER and CHIDSEY, JJ.

reargument refused January 15, 1952.

*Joseph H. Lieberman,* for appellants.

*Joseph S. Clark, Jr.,* in propria persona, with him *Raymond J. Bradley* and *Morris M. Pickholtz,* for appellee.

OPINION BY MR. CHIEF JUSTICE DREW, December 18, 1951:

The question involved in this mandamus proceeding, as accurately stated by the learned court below, is: Does the Controller of the City and County of Philadelphia have the authority to examine the records of the Board of Revision of Taxes of the County of Philadelphia as the source material of the tax collection functions of the City and County? The court below held that he does and the Board has appealed.

Joseph S. Clark, Jr., Controller of the City and County of Philadelphia, in the course of his duties conducted an audit of the books of the office of the City Solicitor which included the Personal Property Tax Lien Bureau of that office. That Bureau records in the prothonotary's office all liens for delinquent personal property taxes and also marks such liens satisfied upon the payment of the tax or upon abatement by proper order of the Board of Revision of Taxes. When a tax is abated the Board gives the Bureau notice by forwarding to it a carbon copy of the letter sent to the taxpayer. An employe of the Bureau then verifies this with the office of the Receiver of Taxes before satisfying the lien of record. In the course of the audit of the Bureau's accounts, the Controller learned that one of the two employes responsible for verifying the abatements had misappropriated money. In order to ascertain the full extent of the misappropriation, the Controller examined the records of the Receiver of Taxes but found them insufficient to serve as a basis for comparison with the records in the City Solicitor's office. He then requested the Board of Revision of Taxes to make available its records so that he could check with the source material to determine the total amount embezzled. This request was refused by the Board following which the Controller filed this complaint in mandamus.

In *Clark v. Meehan,* 367 Pa. 166, we reviewed the powers and duties of the Controller and concluded that he had "broad supervisory powers over the fiscal affairs of the county . . ." He has similar powers over the fiscal affairs of the City. The Board, however, relying on *Selig v. Philadelphia,* 232 Pa. 309, 81 A. 308, argues that it is a state agency and consequently its records are not subject to examination and audit by the Controller. Such an argument places far too broad a meaning on the *Selig* case.

In that case, the City of Philadelphia entered into a contract with a private corporation whereby the corporation was to appraise all real estate in certain wards of the City. Taxpayers sought an injunction to prevent the City from paying money to the corporation under that contract. It was there held that because the legislature had provided a complete system for evaluating and assessing property through the Board of Revision of Taxes, the City was without authority to enter into the contract and appropriate money to duplicate the function of the Board. That case goes no farther than to state that a municipality may not interfere with the powers of an agency created by the State. That rule is, of course, a sound one and is properly recognized by the Controller. He could not and does not seek to determine the correctness of any assessments or abatements. That is left to the sound discretion of the Board and may not be interfered with by the Controller. He seeks only to examine the Board's records in an effort to learn the true financial condition of the City and County. This he has a right to do.

In the *Selig* case we stated, at p. 314: "Any power claimed by a municipal corporation to supervise, in part or in whole, a department created by the commonwealth *must be based upon an express grant, or upon necessary implication from such a grant*" (Italics added). Here, there is an express grant of supervisory

powers to the Controller by the Act of June 27, 1895, P. L. 403, §4, which provides: "The said controller shall have a general supervision and control of the fiscal affairs of the county . . ." That language is a clear grant of power to the Controller to examine the records of the Board since it cannot seriously be argued that the Board is not concerned with the fiscal affairs of the County. One of the principal sources of revenue of both the City and County is the taxation of real and personal property. Under our system of taxation the first step is to assess the value of the taxable property. The assessed value is then multiplied by the tax rate and the total thus obtained is the amount due the municipality by the property owner. Thus the assessments made by the Board are the initial step in the whole process of taxation and it is axiomatic that taxation is the basis for the whole fiscal structure of the City and County. From that it follows that what the Controller here asks is not prohibited by the *Selig* case but is, on the contrary, supported by it and in full accord with it.

Furthermore, in order for the Controller to exercise the supervision and control required by law he must have access to all of the necessary and pertinent records. That this is true is demonstrated by the situation which gave rise to this proceeding. The Controller having found that a city employe had apparently embezzled certain funds, sought, as was his duty in performing an audit, to determine the exact amount embezzled. The embezzlement had occurred on abated taxes. The only records available in the City Solicitor's office to show an abatement of tax by the Board were unsigned carbon copies of letters, the originals of which were purportedly sent by the Board to the taxpayer. Those copies were not even on a letterhead of the Board, but were on plain paper and in no way authenticated. Clearly, a carbon copy of a letter does not prove that

the original letter was either written or mailed by the Board. How else could the Controller determine those questions than by verifying the facts from the Board's own records? It is a fundamental precept of sound accounting practices that original records must be examined to determine the validity and accuracy of accounts. As we have stated, the Board performs a basic function in the fiscal affairs of the City and County. It cannot deny the Controller access to its records and thereby deny him the power to exercise his statutory duty to supervise those fiscal affairs.

The final argument made by the Board is that mandamus will not lie. This is once again based on the mistaken impression that the Controller is seeking to interfere with the Board's exercise of its discretion. Such is not the case. The Controller asks only the right to examine the records of the Board as he is authorized to do under the law. Mandamus is the proper remedy to compel such action: *Clark v. Meehan*, supra.

Judgment affirmed. Costs to be paid by appellants.