## Meade et al. v. Clark, Jr., Mayor, et al.

Before Milner and Mawhinney, JJ.

*Joseph H. Lieberman* and *Nochem S. Winnet,* for plaintiffs.

*Robert M. Landis,* assistant city solicitor and *Abraham L. Freedman,* city solicitor, for defendants.

*Eric A. McCouch* and *William Barclay Lex,* for amicus curiæ.

MILNER, J., November 6, 1952.—The petition filed in this case is for a declaratory judgment declaring the rights and status of the members of the board of revision of taxes, and the registration commission and the employes of their respective units under the new Philadelphia Home Rule Charter. Defendants filed an answer to the petition and by agreement of the parties the matter came before the court en banc for argument and final hearing on October 20, 1952. It was agreed by counsel for plaintiffs and counsel for defendants that the pleadings present solely legal questions, raising no issues of fact, and the court was requested to dispose of the questions as on final hearing and to enter judgment accordingly.[1]

The questions raised are whether or not the provisions of the new Philadelphia Home Rule Charter (hereinafter called the charter) banning political activities by appointed officers and employes of the City of Philadelphia apply to the members and employes of the board of revision of taxes (hereinafter sometimes called the board) and the registration commission (hereinafter sometimes called the commission), and whether the provisions of the charter placing all employes of the city (with certain exceptions not pertinent to the issue before us) under civil service and related provisions apply to the employes of the board and commission.

Specifically, it is principally contended by defendants that the board and the commission have refused to comply with the civil service provisions of the charter and the regulations issued thereunder in alleged violation of section 7-302(1) of the charter;

---

1. Defendants have expressly waived any question regarding the propriety of the joinder of the parties plaintiff herein and as to the necessity of joining other parties plaintiff and defendant. There are no indispensable parties not now, in effect, before the court.

that the board and commission have refused to require their employes to submit to qualifying examinations as allegedly required by section A-104 of the charter or to submit the information allegedly required by section 8-104. It is also contended by defendants that certain of petitioners and their employes "are members of local committees of a political party and take part in the management or affairs of a political party" in violation of section 10-107(4) of the charter, and that certain of petitioners and their employes "have directly or indirectly demanded, solicited, collected or received . . . assessments, subscriptions or contributions intended for political purposes" in alleged violation of section 10-107(3) of the charter. We have considered the sanctions provided for by the charter for violation of the above sections and the impasse in city administration reflected by the pleadings and have concluded that the matter presents the ripening seeds of an existing controversy justifying the entry of a declaratory judgment. There is present an actual controversy in which the differences have reached the stage of antagonistic claims, actively pressed on one side and opposed by the other. The remedy under the Uniform Declaratory Judgments Act of June 18, 1923, P. L. 840, as amended and supplemented, 12 PS §831 et seq., is properly sought.

We shall not consider in this opinion section 5-900 of the charter, and the questions posed as to assignments of building space to the board and commission. It was indicated at the hearing herein that an amicable adjustment is pending in that matter. Nor shall we here consider section 6-101 of the charter and the authority of the director of finance to prescribe a system of mechanized record keeping for the board since such matter is closely related to a mandamus case in this court in which a final hearing has been held and is awaiting disposition. See Fahey Estate, 356 Pa. 535

(1947). Nor shall we here consider sections 3-702 (3) and 7-401 (*a*) and (*b*) of the charter and the application of the job classification program to plaintiffs. On these subjects if, after we have given expression to our views on the major principles involved, the parties are still unable to agree, they will be free to take such action as they deem best. All parties concerned have given this matter an air of urgency which can be best satisfied by avoiding unnecessary collateral judgment.[2]

Insofar as the parties indicate a willingness to join issue on the broad undefined question of whether the charter provisions apply *in general* to the board and commission we wish to make it clear that we make no declaration on such subject. We have passed only upon the applicability of the specific charter sections to which we have made reference. Only the presence of a clearly defined issue justifies the rendition of a declaratory judgmnt.

Defendants rely heavily (in the concluding paragraphs of their answer) upon the assumption "that the provisions of the Home Rule Charter apply with full force and effect to the members and employes of [the Board and the Commission]" because "the City-County Consolidation Amendment has effected the consolidation of all offices which prior to the adoption thereof

2. Defendants petitioned the Supreme Court for a special certiorari because of the alleged urgency and importance of the question involved. This petition was refused and the Supreme Court entered an order, dated October 2, 1952, directing this court to expedite the proceedings in order to dispose of any appeal at the November 1952 session of the Supreme Court in Philadelphia.

Plaintiffs' petition was filed on July 31, 1952, properly endorsed with a notice to plead within 15 days. Defendants' answer was filed on September 12, 1952, and was subsequently amended on September 19, 1952. After seeking the special certiorari the matter was presented to this court on October 20, 1952. We indicated our decisions in this and seven related cases by filing our final orders and judgments on October 31, 1952, pending the completion and filing of our opinions explanatory of our action.

on November 6, 1951, performed duties and functions of the County of Philadelphia". We have this day filed an opinion in the case of Lennox, Sheriff, v. Clark, Jr., Mayor, et al. (transferred to and heard in this court), setting forth at some length our views as to the applicability of certain sections of the new Home Rule Charter to former "county" offices and officers. The matter now before us raises two new important questions for our consideration:

(a) Are the board of revision and the registration commission such governmental units as fall within the terms of the City-County Consolidation Amendment?

(b) Does the First Class City Home Rule Act limit the power of the city to such extent that its charter provisions cannot be deemed to extend to petitioners?

We shall consider these questions in their stated order.

We are of the firm opinion that neither the members of the board nor the commission are county officers within the provisions of the City-County Consolidation Amendment (Constitution, article XIV, sec. 8). Section 8 of Article XIV cannot be considered without reference to section 1 of the *same* article which provides as follows:

"County officers shall consist of sheriffs, coroners, prothonotaries, registers of wills, recorders of deeds, commissioners, treasurers, surveyors, auditors or controllers, clerks of the courts, district attorneys and such others as may from time to time be established by law; and no treasurer shall be eligible for the term next succeeding the one for which he may be elected." [3]

---

3. This section is quoted as it reads after the Amendment of November 7, 1945. The designation of county officers remains the same as before the amendment. Prior to the amendment it was provided that sheriffs and treasurers could not succeed themselves and the only effect of the amendment was to free sheriffs from such restriction.

It must be noted that neither the board nor the commission are designated as county officers in this section of the article.

Although this enumeration of county officers is not necessarily exhaustive we are unable to conclude that, in the course of time, the board and commission members may be regarded as county officers within the meaning of the constitutional phrase "and such others as may from time to time be established by law". When the Constitution was adopted in 1873 the list of officers set forth in section 1 included all the then conceived county officers and they were the only officers to whom the other appropriate sections of article XIV applied. The phrase "such others as may from time to time be established by law" had reference to possible future county officers which might be created. The omission of the members of the board of revision of taxes was necessarily significant because the board was then already in existence, having been created in substantially its present form under the Act of March 14, 1865, P. L. 320;[4] it is an institution which antedates our present Constitution (see Suermann et al. v. Hadley, Treasurer, 327 Pa. 190, 194). When the Act of 1865 was thereafter repealed by the Act of June 27, 1939, P. L. 1199, 53 PS §4791 et seq., new county officers were not thereby created. It must be assumed that the drafters of the Constitution and the Amendment of 1945 knew of the existence of the board and deliberately omitted reference to its members as county officers. Likewise there is nothing in the First Class City Permanent Registration Act as amended [5] to indicate that the members of the registration commission thereby

4. See the Act of July 27, 1842, P. L. 441, creating the first board of revision of taxes and the Consolidation Act of February 2, 1854, P. L. 21, making certain changes as to Philadelphia.

5. Act of March 30, 1937, P. L. 115, as amended, 25 PS §623-1 et seq.

created were to be regarded as county officers within the meaning of article XIV, sec. 1, of the Constitution. When article XIV, sec. 1, was readopted, as amended in 1945, no change was made in the designation of county officers to include the registration commissioners then existing; we must also regard this as a clear intent to exclude the commissioners from the constitutional enumeration of such county officers.

We do not consider it necessary to consider at length the various cases [6] cited and analyzed by the parties in their respective contentions as to whether or not the board and commission are "State agencies" or "partake of the nature of a county office". It is sufficient to note that the members of these units are not county officers within the meaning of the City-County Consolidation Amendment because of the limited enumeration in article XIV, sec. 1, of the Constitution. The legislature is undoubtedly competent to declare the members of such agencies to be county officers but it has not done so. The contention of defendants, in their brief, that there is a pattern indicating that "assessing officers of the counties are treated by the legislature as county officers" is without merit. To justify the conclusion that the legislature intended to designate a county officer within the terms of article XIV, sec. 1, of the Constitution, such intention must appear upon the face of the act; and enumerated list of county officers cannot be expanded by implication or inference.

Section 2 of article XIV of the Constitution provides that "County officers shall be elected . . ." The members of the board and commission hold their offices by

6. Selig v. Philadelphia, 232 Pa. 309 (1911); Suermann et al. v. Hadley, Treasurer, 327 Pa. 190 (1937); Commonwealth ex rel. Smillie v. McElwee et al. 327 Pa. 148 (1937); Clarke v. Meade, 369 Pa. 409 (1951); see also Commonwealth v. Collier, 213 Pa. 138 (1905).

appointment. This is a further indication that they are not county officers and the office that is held is not a county office. See Porter v. Shields, 200 Pa. 241 (1901).

In Commonwealth ex rel. v. Collier, 213 Pa. 138 (1905), in a case involving the "board for the assessment and revision of taxes" in and for the County of Allegheny which board was appointed by the judges of the several courts of that county, the court said at pages 139 and 140:

". . . By the 1st section of the same article county officers consist of sheriffs, coroners, prothonotaries, registers of wills, recorders of deeds, commissioners, treasurers, surveyors, auditors or controllers, clerks of the courts, district attorneys, and such others as may from time to time be established by law. With authority thus clearly given to the law making power to add to and increase the constitutional list of county officers, the first question to be considered in this proceeding is, Has the legislature done so in the act under consideration?

"The members of the board created by the act are not declared to be county officers; on the contrary, by directing that they shall be appointed and not elected, the legislature must manifestly be understood as not having intended to create new county officers. In passing the act the guide of its members was the constitution, and with it as an open book before them its unmistakable words were that if new county officers were to be established they would have had to be elected and could not be appointed. The legislature further knew from section 3rd of the same article that the constitution contemplates the appointment of officers within a county who are not county officers. The members of the board are not designated in the act as county officers, and, strictly speaking, they could not be so designated. In Taggart v. Commonwealth, 102 Pa. 354, it is

true it is said, 'In determining what class of officials should be designated county officers, the convention manifestly had in view those whose duties were coextensive with the boundaries of the county;' but a surer test is the character of the duties to be performed by the officers. The duties of a state officer to be performed within a county may be coextensive with and limited to it, but for that reason he is no less a state officer if he acts for the state. The duties to be performed by the board created by the act of 1905 are not for the county alone, but for the state as well . . ."

Defendants contend that the board and commission, although they are not expressly designated as county officers in section 1 of article XIV of the Constitution, have duties which are confined within the jurisdiction of the County of Philadelphia and are therefore brought within the framework of the city government by the so-called City-County Consolidation Amendment and are subject to all the provisions of the Philadelphia Home Rule Charter. (See opinion of Abraham L. Freedman, city solicitor, rendered to defendant, Lennox L. Moak, dated July 23, 1952, copies of which he sent to defendants.) We cannot agree with this contention. It is correct to note that what we have stated has been in reference to county *officers*, not county offices. But we do not think that defendants may succeed by contending that the functions of the board and commission are essentially county functions and that the consolidation amendment subjected all such functions to the municipal legislative authority. That the city does not have such power over "county functions" as here contended has been sufficiently demonstrated in the case of Lennox, Sheriff, v. Clark, Jr., Mayor, et al., 87 D. & C. 289. Both the Act of 1939, creating the board and the Act of 1937, creating the commission, by the very terms of the consolidation amendment, remain in full force unaffected by the Home Rule

Act or the charter adopted pursuant thereto. The consolidation amendment provides that county functions are to be performed by officers selected "as may be provided by law" and that "all laws applicable to the county of Philadelphia apply to the city". Even if the board and commission could be regarded as performing county functions, their powers and duties have been set forth by the General Assembly and cannot be affected until and unless the legislature expands home rule to include county home rule as well as city home rule; see opinion filed this day in Lennox, Sheriff, v. Clark, Jr., Mayor, et al., 87 D. & C. 289.

Aside from the foregoing considerations we are of the opinion that the Home Rule Act itself spells out a limitation of the grant of power to the city and a reservation of power in the General Assembly.

Article XV, sec. 1, of the Constitution, provides that cities "may be given the right and power to frame and adopt their own charters and to exercise the powers and authority of local self-government, *subject, however, to such restrictions, limitations and regulations as may be imposed by the Legislature*". (Italics supplied.)

The italicized portion of the amendment is important in the disposition of the matter before us because the legislature *has* imposed restrictions and limitations which we deem controlling.

Accordingly in section 18 of the Home Rule Act (53 PS §3421.18) the General Assembly set forth "Limitations", inter alia, as follows:

"Notwithstanding the grant of powers contained in this act, no city shall exercise powers contrary to, or in limitation or enlargement of, powers granted by acts of the General Assembly which are

"(a) Applicable to a class or classes of cities on the following subjects: . . .

"(7) Providing for the personal registration of electors. . . .

"(9) Providing for the assessment of real or personal property and persons for taxation purposes."

These limitations are recognized by section 11-101 of the charter and the annotation of the charter commission. The board presently exists under the authority of the Act of 1939, supra, and is applicable to all counties of the first class. The registration commission was created by the Act of March 30, 1937, P. L. 115, which is by its terms applicable to a class of cities and is known as the First Class City Permanent Registration Act. The Act of 1939 in section 19 (53 PS §4805.19) provides for appointment of the board's personnel by the board, and the Act of 1937 in sections 3, 4 and 5 (25 PS §§623-3, 623-4, 623-5) provides for appointment of the commission's personnel by the commission. These acts remain unsuspended and unlimited by the charter provisions as to civil service and political activity until such time as the General Assembly shall surrender the power it retained.

Defendants earnestly contend that the limitations as to personal registration and assessments refer only to limits on the "powers" of the city; that there is no limitation on the city's power to "deal with the manner in which the powers are exercised by the variety of agencies which exist within the city". By this defendants apparently intend to argue that the civil service provisions of the charter and the prohibitions as to political activity may be selectively applied to the board and the commission. We cannot agree to such narrow construction of a reservation of power by the State as against the municipality. An examination of the full act in relation to each unit indicates an entire legislative scheme no part of which can be affected by the charter. The Act of 1939, relative to the board, is

entitled: "An Act relating to the assessment of real and personal property and other subjects of taxation in counties of the first class." [7]

This phraseology is substantially identical with the wording of the limitation in the Home Rule Act.

The Act of 1937 relative to the commission is entitled:

"An Act to provide for the permanent personal registration of electors in cities of the first class as a condition of their right to vote at elections and primaries [etc.]."

Again it will be noted that the phraseology of this title is substantially identical with the wording of the limitation in the Home Rule Act. We are satisfied that no portion of these acts can be canceled by the charter. The Act of 1939, under which the board acts, provides that the members of the board shall be appointed by a

---

[7] Insofar as defendants contend that the Act of 1939 is not applicable to a "class or classes of *cities*" but rather to *counties* of the first class, we are satisfied that the legislature intended reference to the Act of 1939; any other conclusion yields an absurdity. The restriction in section 18 was not intended to apply to nothing.

The use of the phrase, in both the title and body of the Act of 1939, "counties of the first class" rather than "cities of the first class" is without significance. All the legislature intended was to designate the territorial limits within which the board was to perform its functions. It is significant that in section 12 of the Act of June 27, 1939, P. L. 1199, it is provided:

"It shall be the further duty of the board when necessary, to provide for the valuation and assessment of all subjects of taxation which may hereafter be made taxable by the county, *or any city* or other municipal subdivision of the Commonwealth located in or coterminus in its boundaries with the county," etc. (Italics supplied.)

And section 11 of the act provides that in the assessment of personal property the board shall have the duties provided in the Act of June 17, 1913, P. L. 507, to provide revenue for State and county purposes and "in cities coextensive with counties, for city and county purposes."

majority of the judges of the Courts of Common Pleas of the County of Philadelphia. The judges of the courts are the ones who are vested with the right to determine their qualifications. The board is given the power of appointing its employes and filling any vacancies which may occur. It follows that the board has the authority to fix the qualifications, pass upon the same and to discharge its employes. The board was undoubtedly given this right because it has important duties to perform and it is responsible for faithfully carrying out the duties and functions imposed upon it by the legislature. There has been no statute adopted by the legislature which has repealed, altered or modified the authority of the board as above set forth. The Act of 1937, supra, under which the registration commission acts, provided that the members of the commission shall be appointed by the Governor. He is the one who is vested with the right to determine their qualifications. The commission, in turn, is given the power to appoint "such assistants and employes (including inspectors) as, from time to time, it may deem necessary" to carry out the provisions of the act. It has the power to remove its employes, etc., except that no registrar appointed by the commission shall be removed except for cause. The act provides that the commission shall conduct public hearings to hear complaints of any qualified elector that a registrar "does not possess the qualifications, requisite for the performance of the duties of his office, or has violated the provisions of this act". If the commission finds that the charges are well founded they shall "decline to appoint such person, or remove such registrar". The commission also has important duties to perform and is responsible for faithfully carrying out the provisions of the First Class City Permanent Registration Act and the legislature intended that it have the authority to fix the qualifications of its employes.

Much was said in the argument of this case of the advantages of a ban upon political activities of government employes and the advantages of having all government employes under civil service. It is not for this court to pass upon the desirability of the legislation which we are examining. In Selig v. Philadelphia, 232 Pa. 309, 314 (1911), it was stated:

"Any power claimed by a municipal corporation to supervise, in part or in whole, a department created by the commonwealth must be based upon an express grant, or upon necessary implication from such a grant."

The city cannot claim the power and authority it asserts in this matter under any express grant nor can it claim such power and authority by necessary implication because by section 18 of the First Class City Home Rule Act any such implication is negatived. In Suermann et al v. Hadley, Treasurer, supra, at page 194, Chief Justice Kephart in delivering the opinion of the court said:

"In considering acts of the legislature courts should be cautious in dealing with laws affecting the operation of the various agencies of Government. Courts cannot be placed in a position, nor should they have the appearance, of being super-legislative bodies that control legislation because it is unwise, or it is not in accord with the ideas of the judges. Courts are not the guardians of political parties, creeds, or of any designated section of the social order; but when the people by their fundamental law have definitely restricted legislative activities, we are bound to give effect to the restriction."

For any or all of the reasons we have set forth we have concluded neither the members of the board or the commission or their employes come within the scope of sections 7-302(1), A 104, 10-107(3) or 10-107(4) of the Philadelphia Home Rule Charter. From what we

have said it is apparent that the decision in the case of Carrow v. Philadelphia, 371 Pa. 255 (1952), cannot have any application to this case; see Lennox, Sheriff, v. Clark, Jr., et al., 87 D. & C. 289. However, we have carefully examined section 8-104 of the charter and are of the opinion that it is applicable to both the board and commission.

Section 8-104 requires "each department board and commission of the city *and every other agency receiving an appropriation from the City Treasurer*" to furnish a list of employes and certain information to certain city officers. It would seem that this provision in no way interferes with the duties or powers of the board and commission, nor does it negate any legislative action. This type of provision seeks to promote maximum efficiency in the city's budgeting process: compare Clarke v. Meade, 369 Pa. 409 (1951), and it is entitled to such information.

We therefore enter the following.

### Declaratory Judgment

Now, October 31, 1952, upon consideration of the petition of plaintiffs and the answer thereto of defendants, the parties hereto have agreed that a full and final hearing has been held herein, it is ordered, adjudged and declared as follows:

That sections 7-302(1), A-104, 10-107(3) and 10-107(4) of the Philadelphia Home Rule Charter, which became effective January 7, 1952, do not apply to the board of Revision of Taxes in and for the City and County of Philadelphia and the Registration Commission in and for the City of Philadelphia, their members, assistants, counsel, and other employes; but that section 8-104 of the charter does apply to the board and commission.